**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

MELISSA BLOUNT,                          No. 1:20-cv-18805-NLH-MJS

               Plaintiff,          **OPINION**

      v.

TD BANK, N.A., et al,

               Defendants.

---

**<u>APPEARANCES</u>:**

DESHA JACKSON
DESHA JACKSON LAW GROUP, LLC
4400 ROUTE 9 SOUTH
SUITE 1000
FREEHOLD, N.J. 07728

    *On behalf of Plaintiff Melissa Blount*

A. KLAIR FITZPATRICK
MORGAN LEWIS & BOCKIUS
1701 MARKET STREET
PHILADELPHIA, PA. 19103

RUDOLPH J. BURSHNIC
MORGAN, LEWIS & BOCKIUS LLP
502 CARNEGIE CENTER
PRINCETON, N.J. 08540

    *On behalf of Defendants TD Bank, N.A., Amber Carroll, and
    Scott Lindner*

WILLIAM K. KENNEDY, II
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
MAIN STREET
PLAZA 1000 - SUITE 500
VORHEES, N.J. 08043

ERIN KATHLEEN CLARKE
MONTGOMERY MCCRACKEN WALKER & RHOADS LLP
457 HADDONFIELD ROAD
SUITE 600
CHERRY HILL, N.J. 08002

RENEE NUNLEY SMITH
MONTGOMERY MCCRACKEN WALKER & RHOADS
1735 MARKET STREET
21ST FLOOR
PHILADELPHIA, PA. 19103

 *On behalf of Defendant Rick Bechtel*

**HILLMAN**, District Judge

 Pending before the Court is Plaintiff Melissa Blount's ("Plaintiff") motion for reconsideration, (ECF 81), of the Court's opinion and order granting Defendants TD Bank, N.A. ("TD"), Amber Carroll, Scott Lindner, and Rick Bechtel's motions to dismiss in part, (ECF 70; ECF 71). For the reasons expressed below, the motion will be denied.

**I.   Background**

 The Court assumes the parties' familiarity with the facts underlying this action. Plaintiff filed an initial complaint in New Jersey Superior Court on December 9, 2020, (ECF 1-1), which was thereafter removed to this Court, (ECF 1), after it was first amended in state court, (ECF 1-3). Plaintiff then filed a second amended complaint. (ECF 13). The Court dismissed the second amended complaint in an opinion and order dated September 19, 2022. (ECF 49; ECF 50). The Court concluded that the "Second Amended Complaint, as written, [wa]s so convoluted that

2

the Court [could not] discern the bounds of the allegations"
with specific issues including lack of clarity as to which
counts related to which Defendants, poor precision with respect
to relevant dates and actions, events presented out of
chronological order, and individuals referenced throughout the
narrative without any context. (ECF 49 at 7-11).  The Court
provided "one more opportunity to file an amended pleading" and
advised "[i]f Plaintiff chooses to file an amended complaint,
Plaintiff should (1) refrain from repeating allegations unless
absolutely necessary; (2) identify the allegations related to
each Defendant in a consolidated matter; (3) present the
allegations in chronological order to the extent possible; and
(4) identify which counts apply to which Defendants."  (Id. at
10-11).

Plaintiff filed the third amended complaint ("TAC") on
October 28, 2022, asserting eight substantive counts[1] – (1)
violation of the Conscientious Employee Protection Act ("CEPA"),
(2) race discrimination and disparate treatment under the New
Jersey Law Against Discrimination ("NJLAD"), (3) hostile work
environment under the NJLAD, (4) intentional infliction of
emotional distress, (5) age discrimination and disparate

---

[1] Plaintiff also asserted a count against fictious parties.  (ECF
53 at ¶¶ C.9 281-84).  The Court recognized in its motion-to-
dismiss opinion that that this count did not present any
additional allegations.  (ECF 70 at 13 n.3).

treatment under the NJLAD, (6) aiding and abetting under the NJLAD, (7) failure to promote, race discrimination, disparate treatment, and disparate impact under the NJLAD, and (8) wrongful termination.  (ECF 53).

Defendants moved to dismiss the TAC.  (ECF 56; ECF 57). The Court granted dismissal in full as to Counts 4, 5, 7, and 8, (ECF 70 at 32-34, 38-41, 47-48, 51-52; ECF 71), dismissal for individual Defendants as to Counts 2 and 3, (ECF 70 at 27-28, 52; ECF 71), and dismissal for Lindner and Bechtel as to Count 6, (ECF 70 at 44-45, 52; ECF 71).  The Court declined Defendants' request to strike or dismiss the TAC in whole or in part for continued violation of pleading standards, but "expresse[d] its profound disappointment in Plaintiff's failure to heed its prior admonishment regarding proper pleading standards in federal court and the unnecessary complications such verbose and scattershot pleadings cause for the Court and the opposing parties."  (ECF 70 at 17-22).

Plaintiff filed the instant motion, (ECF 81), seeking reconsideration relating to her compliance with the Court's pleading instructions, the Court's decision not to consider certifications that accompanied her oppositions, the Court's dismissal of Counts 2, 3, and 6 of the TAC as to individual Defendants, the dismissal of Count 5 alleging age discrimination, and the Court's finding as to Defendants'

4

allegedly continuing violative conduct, (ECF 81-2).  Plaintiff's counsel, in a certification, asserts that "Plaintiff believes this Court has made material errors in granting the motions to dismiss and has unnecessarily inserted its own opinion and bias in doing so."  (ECF 81-3 at ¶ 11).  Defendants thereafter filed oppositions.  (ECF 82; ECF 83).

## II. Discussion

### A. Jurisdiction

The Court exercises original jurisdiction over this action as the matter in controversy exceeds $75,000 exclusive of interest and the parties are diverse in citizenship.  See 28 U.S.C. § 1332(a).

### B. Motions for Reconsideration

Motions for reconsideration are not expressly authorized by the Federal Rules of Civil Procedure and are rather products of Local Civil Rule 7.1(i).  See Rich v. State, 294 F. Supp. 3d 266, 272 (D.N.J. Feb. 6, 2018).  The Local Civil Rules provide that motions for reconsideration are to be accompanied by "[a] brief setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked . . . ."  L. Civ. R. 7.1(i).  Motions for reconsideration may be granted only upon a showing that (1) there has been an intervening change in controlling law, (2) evidence has become available that was unavailable when the Court entered the

5

relevant order, or (3) reconsideration "is necessary to correct a clear error of law or fact to prevent manifest injustice." Solid Rock Baptist Church v. Murphy, 555 F. Supp. 3d 53, 59-60 (D.N.J. Aug. 16, 2021) (citing Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).

"[A] motion for reconsideration is an 'extremely limited procedural vehicle,'" Champion Lab'ys, Inc. v. Metex Corp., 677 F. Supp. 2d 748, 750 (D.N.J. Jan. 4, 2010) (quoting Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. Sept. 1, 1992)), and is to be granted only when a court's prior decision overlooked a fact or legal issue that may have been determinative, Andreyko v. Sunrise Senior Living, Inc., 993 F. Supp. 2d 475, 478 (D.N.J. Jan. 24, 2014). Mere disagreement with a court's decision is insufficient. See Rich, 294 F. Supp. 3d at 273. If alleging a clear error of law or fact, "the movant must show that 'dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered.'" Mitchell v. Twp. of Willingboro Mun. Gov't, 913 F. Supp. 2d 62, 77-78 (D.N.J. Nov. 28, 2012) (quoting P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 2d 349, 353 (D.N.J. Aug. 24, 2001)).

## III. Analysis[2]

### A. Plaintiff's Certifications

The Court's motion-to-dismiss opinion acknowledged that Plaintiff's oppositions cited to, and were accompanied by, certifications from both Plaintiff and counsel.  (ECF 70 at 18 n.5).  The Court advised that – in so far as they supplemented or clarified the TAC – it did not consider these certifications in the drafting of its opinion.  (Id.).

Plaintiff argues here that, in disregarding the certifications, the Court has set forth an unduly stringent standard for motions to dismiss, the Court should have considered the certifications – which largely referred back to the TAC, and the Court's decision to not consider the certifications disadvantaged Plaintiff as her oppositions were subject to strict page limits and she relied on the certifications to set forth relevant facts.  (ECF 81-2 at 5-6). The certifications were compliant with Local Civil Rule 7.2(a), according to Plaintiff, as they were limited to statements of

---

[2] TD, Carroll, and Lindner argue that Plaintiff's motion should be denied as it is overlength pursuant to Local Civil Rule 7.2. (ECF 82 at 3).  The Court is disappointed by Plaintiff's filing of an overlength brief after being expressly denied consent by opposing counsel, (id. at 3 n.3), and without first receiving permission from the Court. The Court will nonetheless decline to deny Plaintiff's motion on these grounds in favor of considering it on the merits.  See State Nat'l Ins. Co. v. Cnty. of Camden, No. 08-5128, 2013 WL 11328260, at *1 n.2 (D.N.J. Dec. 3, 2013).

fact rather than argument.  (Id. at 5).   TD, Carroll, and
Lindner counter that – at the dismissal stage – courts are to
limit themselves to the allegations contained in the pleadings
and Plaintiff's argument does not address that principle.  (ECF
82 at 4-5).  The Court agrees.

It is well settled within this Circuit that "a district
court ruling on a motion to dismiss may not consider matters
extraneous to the pleadings," with exceptions to this general
rule made for documents "integral to or explicitly relied upon
in the complaint."  See Doe v. Princeton Univ., 30 F.4th 335,
342 (3d Cir. 2022) (quoting In re Burlington Coat Factory Sec.
Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) and then Doe v. Univ.
of Scis., 961 F.3d 203, 208 (3d Cir. 2020)).  Such integral or
explicitly relied upon documents include "exhibits attached to
the Complaint, matters of public record, and undisputedly
authentic documents if the plaintiff's claims are based upon
those documents."  Red Hawk Fire & Sec., LLC v. Siemens Indus.
Inc., 449 F. Supp. 3d 449, 459 (D.N.J. Mar. 30, 2020) (citing
Guidotti v. Legal Helpers Debt Resol., 716 F.3d 764, 772 (3d
Cir. 2013)).

The Court did not at the time of its opinion, and does not
now, interpret the attached certifications as the sort of
integral or explicitly relied upon documents that may be
considered in addition to the pleadings.  If a court nonetheless

permits a party to present materials extraneous to the pleadings, it is obligated to "(1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Federal Rule of Civil Procedure 56." See Huelas v. Wells Fargo Home Mortg., Inc., No. 11-7250, 2012 WL 3240166, at *3 (D.N.J. Aug. 7, 2012). In this respect, it is Plaintiff's position – not the Court's – that is most akin to a summary-judgment standard.

Certifications submitted in support of, or in opposition to, motions to dismiss have consistently been disregarded by courts within this District. See, e.g., Mucciariello v. Viator, Inc., No. 18-14444, 2019 WL 4727896, at *5 (D.N.J. Sept. 27, 2019) ("Plaintiff cannot submit her own certification on a motion to dismiss."); Progressive Freight, Inc. v. Framaur Assocs., LLC, No. 16-9366, 2017 WL 3872327, at *3 (D.N.J. Sept. 5, 2017) (declining to consider a certification attached to a motion to dismiss). Plaintiff's supporting brief does not address these established principles and, instead, argues that the certifications ought to have been considered because they complied with Local Civil Rule 7.2(a) by containing only statements of fact. This argument completely misunderstands the issue and is akin to arguing that a foul ball ought to have been ruled a home run because it was hit particularly hard.

Plaintiff has provided no support for the proposition that the certifications at issue fit within the narrow carve-out of materials permitted to be considered at the dismissal stage or that district courts may consider a broader range of materials. The Court will therefore deny this portion of the motion for reconsideration.

**B. Individual Liability**

Plaintiff next argues that the Court incorrectly ruled on the individual liability of Carroll, Lindner, and Bechtel under the NJLAD because it did not consider the individuals' liability as aiders and abettors pursuant to N.J.S.A. 10:5-12(e) and case law within both the Third Circuit and New Jersey state courts recognizing that an employee may be individually liable for aiding and abetting under the NJLAD, even for their own conduct. (ECF 81-2 at 6-8).  The TAC contained facts sufficient to support finding that the individual Defendants – all supervisors and managers who communicated amongst each other – substantially assisted or encouraged the alleged discrimination and hostile work environment Plaintiff faced.  (Id. at 10-12).  Defendants claim, to the contrary, that the Court expressly analyzed individual Defendants' aiding-and-abetting liability and correctly concluded that Lindner and Bechtel did not assist or encourage the alleged discrimination.  (ECF 82 at 5-6; ECF 83 at 1-3).

The TAC asserted claims of NJLAD race discrimination and
disparate treatment against all Defendants (Count 2), NJLAD
hostile work environment against all Defendants (Count 3), NJLAD
age discrimination and disparate treatment against TD and
Carroll (Count 5), and NJLAD aiding and abetting against
Carroll, Lindner, and Bechtel, (Count 6).  (ECF 53).  The Court
concluded that, to the extent that Counts 2, 3, and 5 were
directed toward individual Defendants, dismissal was appropriate
as Carroll, Lindner, and Bechtel were not Plaintiff's employers
as defined by the NJLAD.  (ECF 70 at 26-28).

The Court has reviewed this portion of its decision and
maintains that it is a correct recitation of applicable law.
Indeed, the NJLAD prohibits unlawful discrimination by an
employer, does not include individual supervisors in its
definition of "employer," and individual liability for such
supervisors may only arise from aiding-and-abetting conduct.
See O'Toole v. Tofutti Brands, Inc., 203 F. Supp. 3d 458, 467
(D.N.J. Aug. 26, 2016) (citing Tarr v. Ciasulli, 853 A.2d 921
(N.J. 2004) and then Cicchetti v. Morris Cnty. Sheriff's Off.,
947 A.2d 626 (N.J. 2008)).  Plaintiff does not offer competing
controlling authority on this point.

Plaintiff now argues that "[t]he Court did not consider
that under Section (e) of the NJLAD where an employee can be
individually liable as aiders and abettors of discrimination,"

11

(ECF 81-2 at 7), but this point is contradicted by the Court's analysis of Count 6 of the TAC – which Plaintiff herself dedicated to NJLAD aiding-and-abetting liability for individual Defendants.  The Court acknowledged the existence of aiding-and-abetting liability under the NJLAD, the fact that supervisors may be found to have aided and abetted through active and purposeful conduct or deliberate indifference, and that such liability is to be construed broadly and may include a supervisor's own conduct.  (ECF 70 at 42-43).

The Court turned to Plaintiff's oppositions to dismissal which, after appropriately recognizing aiding-and-abetting liability pursuant to the NJLAD, confusingly discussed theories of respondeat superior and vicarious liability and the actions of individual supervisors "bind[ing]" the employer, TD.  (ECF 66 at 27-34; ECF 67 at 18-24).  Interpreting the TAC for itself, the Court declined to dismiss Count 6 as to Carroll, but concluded that the TAC did not plausibly allege that Lindner or Bechtel provided knowing and substantial assistance to the underlying alleged racial harassment and discrimination.  (ECF 70 at 43-45).

Plaintiff appears now to contend that her aiding-and-abetting allegations were adequately pled, and that dismissal of any kind was inappropriate.  This disagreement is insufficient to support a motion for reconsideration, see Rich, 294 F. Supp.

3d at 273, and the Court will therefore deny Plaintiff's motion
to the extent that she seeks reconsideration of the Court's
ruling on NJLAD aiding-and-abetting liability.[3]

### C. Plaintiff's NJLAD Age-Discrimination Claim

Count 5 of the TAC brought an NJLAD age-discrimination and
disparate-treatment claim against TD and Carroll, (ECF 53 at ¶¶
C.5 212-225), which the Court dismissed in full, (ECF 70 at 32-
34).  Plaintiff asserts now that she is over forty years old,
was taken out of a bootcamp role in which she was successful
"and replaced with a Caucasian with less experience," and that
the Court's statement that her replacement was a "mere
reassignment" was incorrect.  (ECF 81-2 at 13).  Plaintiff adds
that it is her understanding that she was replaced by a younger
employee in the role from which she was terminated and that she
has overall adequately alleged age discrimination.  (Id. at 13-
14).  TD, Carroll, and Lindner contend that Plaintiff's brief
repeats the same arguments as her motions-to-dismiss oppositions
and that the TAC made little reference to alleged age
discrimination.  (ECF 82 at 6-7).

---

[3] Plaintiff further argues that there is disparity in the Court's
individual-liability analyses under the CEPA and the NJLAD.
(ECF 81-2 at 11-12).  Predicting such a potential argument, the
Court expressly stated in its motion-to-dismiss opinion that
differing holdings may be expected as the theories of individual
liability under the CEPA and the NJLAD are distinct.  (ECF 70 at
45 n. 10 (citing Espinosa v. Cnty. of Union, No. 01-CV-3655,
2005 WL 2089916, at *10 (D.N.J. Aug. 30, 2005)).

To establish a prima facie case of age discrimination under the NJLAD, a plaintiff must show that (1) they were a member of a protected group, (2) their job performance met the legitimate expectations of the employer, (3) they were terminated, and (4) the employer replaced or sought to replace them – a prong that requires demonstration "that the plaintiff was replaced with 'a candidate sufficiently younger to permit an inference of age discrimination.'" Nini v. Mercer Cnty. Cmty. Coll., 968 A.2d 739, 743 (N.J. Super. Ct. App. Div. 2009) (quoting Bergen Com. Bank v. Sisler, 723 A.2d 944, 956 (N.J. 1999)). The TAC appeared to reference two possible instances of age discrimination, Plaintiff's removal from managing a training bootcamp and her ultimate termination. (ECF 53 at ¶¶ 141, C.5 215, 221).

Plaintiff takes issue with the Court's suggestion that her removal from the bootcamp role may have been a "mere reassignment," (ECF 81-2 at 13), a point made by the Court as it was unclear whether such removal was sufficient to constitute an adverse action absent additional details not included in the TAC, (ECF 70 at 33). Plaintiff's instant brief does not offer additional facts to contradict that finding. If Plaintiff's removal from the bootcamp was a more significant event, her removal was in January 2018, (ECF 53 at ¶ 141), and as stated in the Court's opinion, (ECF 70 at 33), her claim was therefore

14

untimely, see Sgro v. Bloomberg L.P., 331 F. App'x 932, 938 (3d Cir. 2009) (recognizing that discrete actions such as demotions and transfers are subject to the NJLAD's two-year statute of limitations).

With respect to Plaintiff's termination, the Court's motion-to-dismiss opinion noted that, unlike Plaintiff's claims of racial discrimination, the TAC provided little detail of the alleged age-related discrimination that she faced such as comparisons between the treatment she received and the treatment received by younger members of her work group.  (ECF 70 at 32-34).  The Court maintains these concerns.  A plaintiff's failure to provide details such as the actual or approximate age of individuals hired over them or other facts giving rise to an inference of age discrimination has led to dismissal of NJLAD age-discrimination claims within this District.  See, e.g., Mayes v. Jersey City Pub. Schs., No. 18-3550, 2018 WL 11510997, at *2 (D.N.J. Dec. 18, 2018); Hassell v. Johnson & Johnson, No. 13-CV-4109, 2014 WL 1744266, at *5 (D.N.J. May 1, 2014).  The absence of such details in the TAC is especially glaring as Plaintiff has had multiple opportunities to refine her allegations.  Plaintiff has not offered any dispositive issues of fact or law overlooked by the Court and thus Plaintiff's motion will be denied to the extent that it seeks reconsideration of her NJLAD age-discrimination claim.

15

**D. The Continuing Violation Doctrine**

Last among Plaintiff's substantive contentions is her position that she has sufficiently pled that the continuing violation doctrine applied and sustained her otherwise untimely claims.  Plaintiff asserts that she has alleged TD's support of the Ku Klux Klan ("KKK"), TD's position that African Americans were "not worth trying to give mortgages," the fact that African Americans were overall treated less favorably at TD, and an array of instances in which she was humiliated or demeaned such as when her office was moved to the lunch area, she was sent to meetings unprepared, and she was forced into various roles. (ECF 81-2 at 14).  Plaintiff states that her KKK allegation alone is sufficient to demonstrate racial animus and that it was unnecessary at the pleading stage for her to provide further details in support of her claim.  (Id. at 14-15).  TD, Carroll, and Lindner reply that it is unclear what Plaintiff is arguing in her brief as the Court's motion-to-dismiss opinion did not strike Plaintiff's KKK allegation.  (ECF 82 at 7-8).

As an initial matter, the Court recognizes apparent inconsistences between what Plaintiff argues in her brief and what is pled in the TAC.  For instance, Plaintiff's brief alleges that Defendants did not "think African Americans are not worth trying to give mortgages to[]," (ECF 81-2 at 14), an allegation that the Court assumes accidentally uses a double

16

negative and is meant to refer to the TAC's allegation that TD
insufficiently lent to low-income individuals as required by the
Community Reinvestment Act.  (ECF 53 at ¶¶ 93-94).  The TAC
further alleged that these low-income individuals are
predominately of African American and Latinx populations and
Plaintiff unsuccessfully advocated for compliance with the
Community Reinvestment Act.  (Id. at ¶¶ 93, 95-96).

Similarly, while Plaintiff's motion brief asserts that TD
"supported a program with the KKK for several years" and "[n]o
one at TD Bank acted with any urgency to stop supporting this
program after [Plaintiff] mentioned it," (ECF 81-2 at 14), the
TAC alleged that TD supported the Deerfield Township annual
fair, which Plaintiff learned was sponsored by the KKK and,
"[a]fter a long debate," the request to support the annual fair
was declined, (ECF 53 at ¶¶ 34-38).  The Court noted in its
motion-to-dismiss opinion that these allegations were vague both
as to what Plaintiff learned about the sponsorship of the annual
fair and what the referenced "long debate" consisted of,
including what she informed her supervisors of at TD.  (ECF 70
at 20 n.6).  Though Plaintiff does not believe that she needs to
provide such details at this stage, (ECF 81-2 at 15), the Court
could not in its motion-to-dismiss opinion – and cannot now –
deduce how such allegations are relevant to her claims absent
additional details.  Plaintiff's motion brief is devoid of

authority that convinces the Court otherwise.

Regarding the continuing violation doctrine more generally, the Court's motion-to-dismiss opinion recognized the NJLAD's two-year statute of limitations and that application of the continuing violation doctrine may not apply to discrete acts – including terminations, transfers, and promotion denials – even if they are related to otherwise timely claims.  (ECF 70 at 28-29).  Plaintiff offers no authority – controlling or otherwise – to contradict this statement of law or its application. Plaintiff's motion for reconsideration will therefore be denied as to the application of the continuing violation doctrine.

**E. Plaintiff's Compliance with the Court's Instructions**

Finally, the Court will address the initial argument in Plaintiff's brief – that the TAC complied with the Court's September 19, 2022 opinion by refraining from repeating allegations, identifying the allegations and counts applicable to each Defendant, and presenting allegations in chronological order.  Plaintiff disagrees with the Court's criticisms of the TAC and explains that she included a broad set of allegations as the instant lawsuit is her one opportunity to seek redress. (ECF 81-2 at 3).  Plaintiff notes the plausibility standard for pleadings and posits that the Court formed opinions and made rulings more appropriate for summary judgment and that "faulting the Plaintiff for including every fact about every

18

discriminatory act that occurred against her raises the level of impartiality and is not appropriate at the motion to dismiss stage." (Id. at 3-4). TD, Carroll, and Lindner argue that Plaintiff indeed failed to follow the Court's instructions but, nonetheless, the TAC was not dismissed for inadequate pleading and thus Plaintiff's argument is moot. (ECF 82 at 4).

The Court agrees with Defendants. Because the Court did not strike or dismiss the TAC in whole or in part due to Plaintiff's inadequate pleading, (ECF 70 at 17-22), it is unclear what relief she seeks in this portion of her motion. The Court presumes that Plaintiff does not seek reconsideration of a ruling in her favor.

Assuming that Plaintiff, instead, seeks for the Court to recant its criticisms of the TAC, such relief is inappropriate for reconsideration, see In re Mercedes-Benz Tele Aid Cont. Litig., No. 07-2720, 2010 WL 2976496, at *12 (D.N.J. July 22, 2010) ("[S]ince the critical statements on which Mercedes premises its pending Motion for Reconsideration were unnecessary to the Court's ultimate holding, those statements cannot serve as a basis for granting reconsideration of the March 15, 2010 ruling."), and the Court nevertheless declines to do so here.

The Court's reevaluation of the TAC in response to Plaintiff's pending motion has reaffirmed its initial impressions as articulated in its motion-to-dismiss opinion.

Contrary to Plaintiff's understanding that the Court's criticisms were premised on her "including too many facts," (ECF 81-2 at 3), the Court reiterates here that the TAC contained significant amounts of extraneous information – including nonparties and events that did not clearly relate to Plaintiff's claims – while at the same time failing to provide key details seemingly essential to Plaintiff's allegations.  One specific example cited in the Court's opinion is Plaintiff's allegation, repeated in the instant motion brief, that TD was engaged in some sort of relationship with the Deerfield Township annual fair and the KKK – an allegation that did not provide any detail regarding an apparently important internet search conducted by Plaintiff or who participated and what was discussed during a related "long debate."  (ECF 70 at 20 n.6).

Despite these recognized deficiencies, the Court declined Defendants' request to strike or dismiss the TAC in whole or in part, preferring instead to analyze Plaintiff's claims on the merits.  The Court maintains that the TAC's lack of clarity and precision did a disservice to the Court and the parties, not least of all Plaintiff.  The Court nonetheless endeavored to balance Defendants' right to clear notice of the allegations against them and Plaintiff's right to seek redress for alleged retaliatory and discriminatory conduct.  The motion-to-dismiss opinion was the product of that effort.  Plaintiff has not

provided any determinative fact or law here that leads the Court to believe that it erred in its analysis and thus the Court will deny Plaintiff's motion on this point.

## IV. Conclusion

For the reasons stated above, Plaintiff's motion for reconsideration, (ECF 81), will be denied.  An order consistent with this Opinion will be entered.


Date: _November 9, 2023_                    _s/ Noel L. Hillman_
At Camden, New Jersey                    NOEL L. HILLMAN, U.S.D.J.